UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEWITT PROPERTY, LLC,

Plaintiff,

v.

Case No. 25-cv-12416
HON. MARK A. GOLDSMITH

YPSILANTI, TOWNSHIP OF,

Defendant.
____________________________________/

**OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT YPSILANTI TOWNSHIP'S MOTION TO DISMISS (Dkt. 6)**

Plaintiff Hewitt Property, LLC brings this action against Defendant Ypsilanti Township, alleging deprivation of rights to equal protection of the law pursuant to 42 U.S.C. § 1983 for denying its application for a zoning variance that would have allowed it to build a gas station. See Compl. (Dkt. 1). Before the Court is the Township's motion to dismiss. See Mot. (Dkt. 6).[1] For the reasons set forth below, the Court grants the motion in part. Hewitt's "class of one" equal protection theory survives, but its Monell theory is dismissed.

## I. BACKGROUND

Hewitt's complaint alleges the following facts. Hewitt, an LLC whose members are both Muslims of Arabic Middle Eastern descent, purchased a property, located within Ypsilanti Township, intending to construct a gas station. Compl. ¶¶ 2, 5–8. Before purchasing the property,

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes Hewitt's response (Dkt. 8) and the Township's reply (Dkt. 9).

Hewitt received assurances from Ypsilanti Township Planner, Jason Iacoangeli, that the property was suitable for a gas station. Id. ¶¶ 7-8. At the time of purchase, the land was zoned as "B-3," which requires the grant of a special use permit to create a gas station. Id. ¶ 10. Hewitt retained an architect to create a site plan for a gas station and communicated with Iacoangeli about the project. Id. ¶¶ 12, 14. Iacoangeli raised "concerns" regarding "the proposed drive-thru and the amount of staking required" and noted the need for a pre-application meeting. 3/14/22 email at PageID.46 (Dkt. 1-4). Hewitt then submitted a site plan application and application for Special Conditional Use on June 14, 2022. Compl. ¶¶ 15–16.

The planner review report was issued on July 28, 2022. Id. ¶ 19. It recommended revisions to the site plan regarding "pedestrian improvements," fencing materials, "and the need for color elevations." Id. ¶ 22. The planner review report also noted "the site 'abuts the major throughfares of Ellsworth and Hewitt.'" Id. ¶ 23. Hewitt continued communicating with the Township, and suspected "the staff recommendation to the Planning Commission would be to deny the application based on non-conformance with the Master Plan." Id. ¶ 24. Hewitt considered "alternative options" but ultimately decided to proceed with "the original site plan and special land use applications" on August 10, 2023, despite the unaddressed issues like the need for pedestrian improvements at the major throughfares of Ellsworth and Hewitt. Id. ¶¶ 25–26. The Township requested revisions to the site plan on August 28, 2023. Id. ¶ 27. Hewitt did not make the revisions and continued with the original site plan. Id. ¶ 30.

The Township considered the application on March 13, 2024. Id. ¶ 31. During the meeting, Fletcher Reyher, the Township's planning and development coordinator, noted that placing a gas station near the intersection of Hewitt and Ellsworth "would create hazardous conditions for pedestrians and vehicles." Id. ¶ 34. Members of the public also spoke out against Hewitt's site

plan at the meeting. Issac Farha expressed concerns regarding gas fumes causing cancer to senior citizens homes in the area. Id. ¶ 37. Salem Farha expressed concerns that the smoke and smell would be an inconvenience to his family. Id. ¶ 39. Tony Farha asserted that the proposed gas station would jeopardize his plans for building a senior center at a 17-acre parcel located at 2005 South Congress, which was asserted to be behind the proposed gas station. Id. ¶ 41. After giving all interested parties and the public and opportunity to be heard, "the Planning Commission voted to deny the application for Special Conditional Use, citing that the Master Plan does not allow gas stations in a Neighborhood Transition District, that it would cause a hazardous condition based on the road configuration, and that it would create more requirements for safety and public assistance." Id. ¶ 43.

Later, on April 9, 2024, a site plan was submitted by third parties to create a Sheetz gas station at 755 South Hewitt Road. Id. ¶ 45. The parcel is at a different intersection: Hewitt and Michigan Avenue. The parcel is also shaped differently, with different neighbors. Sheetz went to the zoning board of appeals to obtain variances and made at least one modification to the site plan at the Township's behest to increase "the amount of transparency required by the ordinance because it faces a street." 10/8/24 planning commission meeting minutes at PageID.163 (Dkt.1-17). The Township granted Sheetz's requests following a public meeting on October 8, 2024. Compl. ¶ 65.

Hewitt alleges that Sheetz is similarly situated and that it was unconstitutional to treat Hewitt differently by denying its zoning request. Id. ¶¶ 75–76. The Township filed a motion to dismiss, arguing that the allegations fail as a matter of law.

## II. ANALYSIS [2]

Because Hewitt names the Township as the sole defendant in its equal protection claim, the Court analyzes Hewitt's claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In the alternative, Hewitt also brings a "class of one" equal protection claim. The Township argues that the Court should reject both theories.

### A. Equal Protection

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

Hewitt alleges, under a "class of one" theory, that Sheets received preferential treatment in that its "project was not subjected to any of the asserted reasons that the Township gave for its denial of Hewitt's application." Compl. ¶ 68.

"A class of one may bring an equal-protection claim, where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 864 (6th Cir. 2012) (punctuation modified). "A class of one plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." Cahoo v. SAS Analytics Inc., 912 F.3d 887, 905 (6th Cir. 2019) (punctuation modified).

---

[2] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Township argues that Hewitt's equal protection claim is facially implausible because the complaint does not sufficiently identify the existence of a comparator. The Township argues that Sheetz is not a similarly situated comparator because the two properties are located at completely different intersections, have different shapes and layouts, different sizes, different neighbors, and different zoning designations. Mot. at 12. Hewitt responds that the properties are similarly situated because: both are on Hewitt Road less than 900 feet apart; both required special land use permits for gas stations; both were designated as Neighborhood Transition District on the Master Plan; similar concerns about road configuration applied to both; and both applications involved the same type of proposed use. Resp. at 9–7. In its reply, the Township further argues that Sheetz is not a comparator because Sheetz pursued variances and made site plan modifications while Hewitt did not. Reply at 4–5.

At the motion to dismiss stage, the court must accept Hewitt's factual allegations as true and draw all reasonable inferences in its favor. Courts do not demand exact correlation in the similarly situated analysis but instead seek relevant similarity. Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000). Hewitt alleges that the Township applied different procedural standards, allowing lengthy public comment at Hewitt's hearing but not at Sheetz's final hearing. Compl. ¶ 74. Hewitt further alleges that the Township did not respond to its requests for more information regarding variances and did not raise the same zoning concerns at Hewitt's hearing as it did at Sheetz's hearing. Id. ¶¶ 29, 69-74. If true, these allegations suggest that the applicants' different approaches may have resulted in different treatment by the Township rather than constituting an independent basis for distinguishing them. Taking the allegations as true and drawing all inferences in Hewitt's favor, Hewitt has plausibly alleged that it and Sheetz were similarly situated for purposes of surviving a motion to dismiss. See Andrews v. City of Mentor, 11 F.4th 462, 476

(6th Cir. 2021) (stating that at the pleading stage all that is required is "plausible allegations" that a property is "similarly situated").

Alternatively, the Township argues that even if Sheetz is a comparator, Hewitt's claim still fails because there was a rational basis for the denial. Mot. at 16. The Township argues it had multiple rational bases for denying Hewitt's application, including: master plan incompatibility, hazardous road configuration, and increased safety requirements. The Township also noted that Hewitt failed to make requested site plan revisions.

A rational basis exists if there is any reasonably conceivable state of facts that could provide a rational basis for the government's conduct. Loesel v. City of Frankenmuth, 692 F.3d 452, 465 (6th Cir. 2012). The plaintiff bears the heavy burden of negating every conceivable rational basis or demonstrating that the action was motivated by animus. EJS Props., LLC, 698 F.3d at 865. However, at the pleading stage, Hewitt need not negate every conceivable rational basis. The question is whether Hewitt has alleged facts that plausibly support an inference that no rational basis existed. Andrews, 11 F.4th at 475–478.

Here, Hewitt alleges that the stated reasons for denial were pretextual because the same master plan designation applied to Sheetz's property but was not mentioned, the same road configuration concerns applied to Sheetz's property but were not raised, and the Township delayed Hewitt's application for nearly two years while processing Sheetz's application in three months. If Hewitt's allegations are true—particularly that the same master plan designation and road configuration factors applied to both properties but were selectively enforced only against Hewitt—this could support an inference that the stated reasons were pretextual and that no genuine rational basis existed. Whether the Township's explanations constitute legitimate rational bases

or pretexts for arbitrary treatment presents a factual question that cannot be definitively resolved on the pleadings when reasonable inferences support Hewitt's theory. Id.

Accordingly, Hewitt's class of one theory survives the Township's motion to dismiss.

**B. Monell Claim**

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must allege: (i) his injury was caused by a constitutional violation, and (ii) the government was responsible for that violation. See Spears v. Ruth, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an "implementation of [the municipality's] official policies or established customs." Monell, 436 U.S. at 708 (1978) (Powell, J., concurring). "There are at least four avenues" for a Monell claim: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (punctuation modified). There can be no municipal Monell liability where there has been no underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Hewitt makes no allegations regarding training, final policymaker decision-making, or custom, so the Court directs its focus on official policies.

Here, Hewitt fails to plausibly allege that there was an official policy of treating people differently based on national origin or religious beliefs. Hewitt's complaint asserts that the Township has an official policy of treating people who are of Arabic Middle Eastern descent and are Muslim differently than all other people. However, Hewitt provides no factual allegations demonstrating the existence of such a policy beyond the single denial at issue. The complaint does not allege that the Township has denied other applications submitted by persons of Arabic Middle

Eastern descent or Muslim faith, nor does it allege any pattern of discriminatory conduct. The planning commission's stated reasons for denial—master plan incompatibility, hazardous road configuration, and increased safety requirements—are facially race and religion neutral land use considerations. There is no allegation that the meeting minutes contain any language suggesting discriminatory animus. Public comments expressed concerns about gas fumes, smoke, and impacts on planned development, not about the identity of the applicant. Moreover, Hewitt has not alleged facts showing that any discriminatory policy was the moving force behind the denial. Heard v. Detroit Pub. Sch. Cmty. Dist., 540 F. Supp. 3d 727, 745 (E.D. Mich. 2021).

Hewitt argues that the different treatment of Sheetz's application demonstrates discriminatory intent. However, the exhibits show that Sheetz pursued variances, made modifications in response to Township feedback, and addressed the concerns raised by planning staff—steps Hewitt declined to take. The factual differences in how the two applicants responded to Township requests provide a non-discriminatory explanation for the different outcomes. At the pleading stage, Hewitt must provide factual content allowing the court to draw a reasonable inference of discriminatory intent. Hewitt's allegations amount to little more than a formulaic recitation that the Township discriminated against it based on protected characteristics, unsupported by plausible factual allegations. Therefore, Hewitt's protected-class discrimination theory fails to state a plausible Monell claim.[3] The Court grants the motion to dismiss with respect to Hewitt's Monell claim.

---

[3] In its response brief, Hewitt requests that the Court grant leave to amend to the extent the Court finds it failed to plead claims. Resp. at 13–14. Hewitt did not file a separate motion with this request, nor did it attach its proposed amendment to its response brief.

Although Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] when justice so requires," a district court may deny such leave when a plaintiff has "neither moved formally to amend nor proffered a proposed amended complaint." See United States ex

## III. CONCLUSION

For the reasons stated above, the Court grants the Township's motion to dismiss with respect to Hewitt's Monell theory but denies it with respect to Hewitt's class of one equal protection theory.

**SO ORDERED.**

Dated: September 4, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 4, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager

---

rel. Owsley v. Fazzi Assocs., Inc., 16 F.4th 192, 197 (6th Cir. 2021). "A bare request in opposition to a motion to dismiss—without indication of the specific grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 699 (6th Cir. 2004) (punctuation modified).

Because Hewitt has not formally moved to amend its complaint, attached a proposed amended complaint, or offered any explanation as to how amendment would cure specific deficiencies in its complaint, its request is denied.